## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____   )
)
SHERIKA NAKYE. HARVEY             )
102 Bell Street                   )
Kosciusko, Mississippi 39090-3712 )
)
    Plaintiff,                )
)
     v.                      )
)
)   Case No: _____
SOUTHWEST CAPITOL                 )
ASSOCIATES LLC,                   )
2101 Wisconsin Avenue, NW         )
Washington, DC 20007-2232,        )
)
MARRIOT INTERNATIONAL, INC.,      )
10400 Fernwood Road               )
Bethesda, Maryland  20817,        )
)
and DOES 1-10,                    )
)
    Defendants.               )
_____   )


## COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL AND THE DISTRICT OF COLUMBIA CIVIL RIGHTS LAWS, AND THE DISTRICT OF COLUMBIA TORT LAWS


### INTRODUCTION

1.  Sherika Harvey (hereinafter "Plaintiff"), is an African-American woman and a resident and citizens of Kosciusko Mississippi. Ms. Harvey bring this action to seek redress for injuries that she suffered because of Defendants' racially discriminatory denial of public accommodations and the right to contract, the intentional infliction of emotional distress, and negligent infliction of emotional distress.

2. Defendants offer public accommodations at a hotel in the District of Columbia, known as Residence Inn Washington, DC/Capitol, located at 333 E. Street SW Washington, DC 20024). On January 16, 2013, Defendants denied Ms. Harvey the use and enjoyment of the benefits, privileges, terms and conditions that they extend to all other similarly situated guests and invitees. Defendants breached their contract with Ms. Harvey and discriminated against them in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981, Title II of the Civil Rights Act of 1964 (Public Accommodations), 42 U.S.C. § 2000 et seq., the District of Columbia Human Rights Act of 1977 as amended 2007, Title 2 Part D, § 2-1402.31 et seq., and Tort Laws of the District of Columbia

## JURISDICTION AND VENUE

3.  The court has primary jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1332, Diversity of Citizenship as parties are citizens of different states and the amount in controversy is more than $75,000 and 1343(a)(4). The court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. §1367 and D.C. Human Rights Act of 1977 as amended 2007, Title 2 § 2-1403.16 (private cause of action).

## VENUE

4.  Venue is proper in the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1391 because the events giving rise to these claims occurred in this District.

**PARTIES**

5.  Plaintiff Sherika N. Harvey is 33 year old African-American woman who resides in Kosciusko, Mississippi.


6.  Defendant Southwest Capitol Associates LLC, a District of Columbia LLC, currently doing business at 333 E. Street SW Washington, DC 20024 is a corporation organized under the laws of the District of Columbia. Upon information and belief, Defendant Southwest Capitol Associates owns, manages, operates, rents, and does business as Residence Inn Washington, DC Capitol, at 333 E. Street SW Washington, DC 20024, and the Inn is a hotel that offers accommodations to the public.


7.  Defendant Marriott International, Inc. is incorporated under the laws of Delaware. The primary purpose of Defendant Marriott International, Inc is to own, operate, and franchise hotels and motels that offer accommodations to the public and the Residence Inn Washington DC Capitol is a hotel that offers accommodations to the public.


8.  Defendants DOEs 1-10 are unknown owners of the land and or Hotel. Upon information and belief, Defendant Defendants DOEs 1-10, own the land Hotel is built on and or the Hotel, and owns, manages, operates and does business as Residence Inn Washington, DC Capitol, at 333 E. Street SW Washington, DC 20024, and the Inn is a hotel that offers accommodations to the public.

9.  In connection with the Plaintiff and the circumstances described herein, Plaintiff knew that Residence Inn Washington, DC Capitol, at 333 E. Street SW Washington, DC 20024 is one of Defendant Marriott's chains of hotels and suites. Plaintiff believed and understood that she was doing business with the owner of the brand name Marriott International because she is a frequent user of Marriott hotels and has Marriott Rewards membership. See Exhibit A. Hereinafter, Defendants Southwest Capitol Associates LLC, Defendant Marriott International, Inc., and DOEs 1-10 are collectively referred to as "Defendant."

**FACTS**

10.  On January 15, 2014, Plaintiff checked into the Residence Inn Washington D.C. Capital, located at 333 E. Street SW Washington, DC 20024.  When she checked in she made the startling discovery that the complete hotel stay had not been paid for as she was accustomed to in the past with the Department of Agriculture, her employer during workshops and trainings that she had attended pursuant to her job as a Consumer Food Safety Inspector, when lodging was always paid for in advance.

11.  With past experience in mind, that the Department of Agriculture paid in advance her full lodging, she failed to pay close attention to the travel information sent to her by Ms. Natasha Williams, and assumed that payment of lodging was the same as it has been in the past when she travelled for such workshops as part of her job, but unfortunately, it was not – each participant was to pay their lodging but will be reimbursed accordingly

.

12.  Before her travel to DC from Mississippi, Plaintiff budgeted only $300 for the trip,

again, based on her belief and assumption that as in the past, lodging would have been

paid in advance (though erroneously). However, the rooms were $183.00 per night +

14.5% ($26.53) equaling $209.53.  Once Plaintiff was told by the clerk that she would

have to pay for the rooms, she had to think quickly of what to do.  She told the clerk that

she could pay for one night and as soon as she got in her room and settled down, she

would inform her administrators of the problem.

13.  The clerk took her credit card and gave her a receipt and she was assured that it was

fine.  Because the federal building was closed at that time, she had no way to

communicate with anyone physically as she only had office phone numbers and email

addresses for the administrators.  As soon as she settled down her room, she emailed Mrs.

Sally Fernandez and Ms. Natasha Williams and explained to them that she came

unknowing that she would have to pay for her lodging, but that she was able to pay for

one night.  The two replied and let her know that everything would be okay and that they

would call the accounting office the next morning to get the remaining one night bill

taken care of.  After getting their reply, she then went off to sleep a bit relieved.

14.  The next morning at the federal building where Plaintiff's meetings were held (just

right around from the hotel), she checked in with Mrs. Fernandez and Ms. Williams to

make sure that  they have taken care of the matter as they promised her they would, and

expressed her apologies for the misunderstanding to them.  They told Plaintiff that they

understood and that the accounting office of the US agency, Food Safety & Inspection

Service (FSIS) which Plaintiff works for, would send the hotel the FSIS credit card information by noon on that day-January 16, 2013.  Plaintiff thanked Mrs. Fernandez and Ms. Williams and they all went ahead with their meetings.  By lunch that day, Mrs. Fernandez informed Plaintiff that said FSIS credit card information had been sent to the hotel.

15.  After the adjournment of Plaintiff's meetings, majority of her colleagues that serve on the committee went back to the hotel, but instead of her going to her room, she went straight to the front desk counter.  There she found a young lady at the desk who she asked to check her hotel account to make sure the night's bill had been paid and that everything was in order before she went to her room.  The young lady at the desk counter told Plaintiff that it was and that "the card was on file." Plaintiff requested that she confirm to her that payment was on the room and that she did not have any problems. Plaintiff got the confirmation she requested, from the young lady at the desk counter, and headed to her room to take some medicine for the headache she got from stressing over the situation.  Even though the administrators assured me that everything would be okay and then being told by the desk clerk that everything was ok, Plaintiff hated the fact that she was in such situation and this severely stressed her.

16.  Thereafter, Plaintiff went to her room, stripped off her clothes and took some medicine.  Plaintiff had some strong medication that she brought with her on the trip with her to help her sleep and relax her and help her stress which is known to make individuals drowsy when taken.  While asleep, the hotel, through its manager and staff, supposedly

called Plaintiff concerning her stay, but Plaintiff did not hear any of the calls even

though, the phone was right beside the bed, because she was drowsy from the two pills

she took.

17.  Sometime after 11 p.m. on the same January 16, 2013, Plaintiff was awoken out of

her sleep to some alarming sounds.  Plaintiff claims she first heard the loudest alarm that

she have ever heard coming from the top of the ceiling and at the same time she heard a

loud banging at her hotel room door - there were people banging with some sort of object

at the door and calling her name.  As Plaintiff sat up in the bed, she witnessed two men

and a woman burst into her hotel room while she was still lying in bed only with her

under wears.  Plaintiff saw the men first, and so she quickly reached for the bedding to

cover herself up further as she was only in her under garments. Plaintiff was in total

shock, afraid and horrified at the dramatic scene that was unfolding before her.  Plaintiff

was told by the woman, who she later found out was the hotel manager to get up and

come down stairs because she could not let her stay in the room that she did not pay for.

18.  Plaintiff informed the lady that she was not correct in her accusation because

Plaintiff had taken care of the bill and have made sure that her hotel account was in order

before coming to her room earlier that evening, as per her enquiries earlier with the

young lady at the desk counter and her confirmation to her that everything was ok, and

that "the card was on file."  The manager countered and told me that it was not and that

she needed me to go downstairs.  Plaintiff explained to the manager that she did not

understand what was going on, and asked the manager to give her some time and chance

to put on some clothes on. While putting on her clothes, Plaintiff was not given the courtesy of putting on clothes in privacy as the two strange men stood right outside her hotel room door while it was halfway open.  Plaint went from shocked, afraid, stressed to being humiliated and embarrassed to being scared for her safety as she knew that she was up against two grown and stout men and if they were to make any physical move against her her, she could not defend herself against them, a thought that terrified her immensely. Plaintiff was then escorted downstairs.

19.  Once Plaintiff got to the desk counter, the manager told Plaintiff that she would have to leave the hotel if unless she made payment for the night.  At this point, Plaintiff narrated to the manager, the whole occurrence and gave the manager the details from when she checked in and to everything and all the conversations Plaintiff had with everyone concerning her stay in the Residence Inn, highlighting the conversation Plaintiff had with the young lady that was at the desk counter, when she back from her meetings to the hotel.  Nevertheless, the manager insisted and continued telling Plaintiff that there was no way she could let Plaintiff stay in the hotel.

20.  Plaintiff explained to the manager that she did not want any problems and that it was not her intent to stay there in the hotel for free.  At this point Plaintiff terrified and not getting the manager to be understanding and reasonable and started cried. Plaintiff manager to calm herself and explained to the manager, that she was from Mississippi, and did not have any family or friends in DC or around it, and there was nowhere for her to go.  The manager was irate and very upset with Plaintiff. Plaintiff was appalled at how

upset the manager seemed to be with her even though the manager could see that Plaintiff

was an emotional wreck, who was trying to convey to her the (manager) what her

administrators had told regarding giving the hotel the FSIS credit card information to pay

for my remaining night board.  Plaintiff explained further to the manager that she worked

to a credible federal agency that they (the hotel) had done business with on multiple

occasions and that she could be rest assured that the agency had taken care of one her one

night hotel bill of $183.00 per night + 14.5% ($26.53).  None of my explanations seemed

to matter to the manager. She did not listen, was not interested in hearing any of

Plaintiff's explanation. She made it clear to Plaintiff that she must leave the hotel, even

though as things progressed, it was close to 12 midnight.


21.  Further, in hopes that she can persuade the manager to understand her situation and

the danger she will be putting her into by throwing her out to the street where she knows

no one and had no money, Plaintiff pleaded with the manager to let her stay in the hotel

lobby because as she had already told her before, that she did not know anyone or have

any family there or anywhere near Washington DC to stay with.  Plaintiff pleaded with

the manager and told her that Plaintiff would not be in the way. Plaintiff informed the

manager that she saw ample corners and places in the lobby area where she could lay

down for the night, but the manager would not have it.  The manager did not want to

listen at this point or even consider talking to Plaintiff's administrators the next morning

about Plaintiff's stay there, something a reasonable person in the manager's position

could have done, giving the fact that Plaintiff had explained that her bill has been paid or

that there must be some kind of mix up, which could be cleared up with her

administrators the next morning and Plaintiff was not running away.  No options were given to Plaintiff.  Plaintiff was told to go back upstairs and get the rest of her belongings and that a taxi would be called for her.  After midnight, Plaintiff said she was put out "like a dog on the streets of Washington DC", a place that she had only visited for a day and a half for the first time, a place where no one knew her and she did not know anyone and a highly populated place where no young woman should ever be on the streets alone let alone a stranger who was not familiar with it, in such emotional state and terribly afraid for her safety.

22.  Plaintiff did not know where to go.  Plaintiff felt hear head spinning, as she wondered what she was to do - many things were going through her head and not having any good options, thought the airport was the only place she could go to.  Plaintiff asked the taxi driver to take her to the Ragan National Airport even though she had no clue of what she would do when she got there.  When Plaintiff got to the airport, she went inside and saw all the counters closed and at that point, she knew that she could not leave and that she would have to sleep there in the airport. Plaintiff went into a restroom where she assumed there would be minimal usage since it was after midnight.  Plaintiff knew that she did not want anyone to see her there and think badly of her.  See two sections in the restroom Plaintiff ventured to the farther section hoping no one would come to that side to see her lying on the floor.  Plaintiff placed her bags on the cold floor and arranged her blazer to rest her head upon and covered herself up with her coat as she laid there on the floor in the bathroom of the Washington Reagan airport.

23.  The humiliation I felt then I still remain and I feel it today.  I was so embarrassed that night and even the next day when everyone found out what happened.  The administrators as well as the deputy directors were very so outraged that they paid a personal visit to the hotel.  Only after this did the hotel make an attempt to apologize.  It was only that morning after the deputy directors scolded the hotel that the staff at the hotel took the time to look on the fax machine to find the documents for payment for my room that were sent when it was said that they were sent.  I do have proof of that!  I did have the option to leave that morning of January 17, 2013 from Washington DC and catch an early flight that morning, but I wanted to stay and finish my mission, what I was there for, and that is to protect public health as I do every day with my job.  I got myself together in that restroom and dressed for the meeting held that morning.

24.  To-date, Plaintiff is still awfully emotional about her ordeal and the treatment Defendant and their employees and agents meted out to her!  Plaintiff believes, and has no doubt in her mind, that if she were a young white woman, she would not have been treated the way she was by the Defendant that night, that what happened to her would not have happened.  Plaintiff's emotional and mental state from that day still afflicts her today.  Plaintiff is still too embarrassed to let any of my family and friends know about the outrageous account of things that happened to her because she would like for them to continually be happy and proud that she had and still have the honor of serving on the Agriculture Committee after being selected by the United States Secretary of Agriculture to sit on such a high regarded committee-The National Advisory Committee for Meat and Poultry Inspection.

25.  Defendant treated Plaintiff differently in a place of public accommodation because of her race and/or her color. Defendant denied Plaintiff the use and enjoyment of the benefits, privileges, terms and conditions that it extends to all other similarly situated guests and invitees. Defendant through its managers and employees, treated Plaintiff in a way that was clear to Plaintiff that but for her race or color, she would not have been treated the way she was, given the fact that a reasonable hotel that is in hospitality business, of the stature and resource as Defendant would have listened to Plaintiff's explanation of her unfortunate and would have acted differently in the situation, but for the fact that they were blinded by their intent to discriminate against Plaintiff, because of her race.

26.  Defendant breached its contract with Plaintiff. Defendant breached its duty owed to invitees like Plaintiff and in the process Defendant intentionally caused Plaintiff emotional distress and or negligent emotional distress. Defendant violated Federal Civil Rights Laws, and the District of Columbia Human Rights Laws and Tort Laws.

27.  As a result of Defendant's unlawful actions as described above, Plaintiff Sherika N. Harvey has suffered, continues to suffer, and will in the future suffer irreparable loss and injury, including but not limited to economic loss, humiliation, anger, embarrassment, emotional distress, nightmares, and unlawful deprivation of their state and federally protected rights to exercise and enjoy equal treatment in the making and enforcing of contracts in places of public accommodation without regard for race and/or color.

## COUNT I

### Unlawful discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981

28.  Plaintiff re-allege and incorporate by reference the above paragraphs, as if fully set forth herein.

29. By discriminating against Plaintiff on the basis of her race and/or color, as an African-American in the manner ser forth, Defendant has denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contract as is, and was, enjoyed by white citizens in violation of Plaintiff's rights under the Civil Rights Act of 1866, 42 U.S.C. §1981.

## COUNT II

### Title II of the Civil Rights Act of 1964 (Public Accommodations), 42 U.S.C. § 2000 et seq.

30.  Plaintiff re-allege and incorporate by reference the above paragraphs, as if fully set forth herein.

31.  By discriminating against Plaintiff on the basis of her race and/or color, as an African-American in the manner ser forth, Defendant has denied Plaintiff equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation of a public accommodation as defined under the section.

32.  Residence Inn Washington DC Capitol, and Marriott International Inc's Hotels including Residence Inn Washington DC Capitol are places of public accommodation under 42 U.S.C. §2000a(b)(1) and affect commerce within the meaning of 42 U.S.C. §2000a(c)(1).

33.  Defendant operates various restaurants, bars, or clubs with its hotels, which are places of public accommodation under 42 U.S.C. §§ 2000a(b)(2), (b)(3), or (c)(4).

34.  Defendant acting through its officers, employees, managers, and agents, has engaged in policies and practices which deny to persons, on account of race or color like Plaintiff, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of its hotel and restaurants, bars, lounges, or clubs located therein.

35.  Defendant acting through its officers, employees, managers, and agents, have carried out such policies and practices of racial discrimination by, among other ways:

a.   applying different and more onerous terms and conditions to non-white persons like Plaintiff at its hotels with regard to affording courtesy, privacy, upholding contract and requirement related to personal security, identification and reservations, than those applied to white persons;

b.  not giving due respect to one's welfare as they should to Plaintiff as an invitee to its public accommodation and hotel than Defendant does and would have done, had Plaintiff been a white young lady;

c. unlawfully and erroneously throwing Plaintiff a young lady of 32 years, who was in a strange city for only a day and half, out of its hotel, without any regard to the risk to her life, the type of danger that may befall her, or her well being, despite her desperate pleas to the manager, that would not have been the case, were Plaintiff to be a white young lady;

d.  The conduct of Defendant described in paragraphs 34 and 35 above constitutes a pattern or practice of resistance to the full and equal enjoyment by non-white persons like Plaintiff, of rights secured by 42 U.S.C. §§ 2000a et seq., and the patter or practice is of  such a nature and is intended to deny the full exercise of such rights.

## COUNT III

### District of Columbia Human Rights Act of 1977 as amended 2007, Title 2 Part D, § 2-1402.31 et seq.

36.  Plaintiff re-allege and incorporate by reference, the above paragraphs, as if fully set forth herein.

37.  By discriminating against Plaintiff on the basis of her race and/or color, as an African-American in the manner ser forth, Defendant has denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges advantages and accommodations of any place of public accommodation and conditions of contract as is, and was, enjoyed by white citizens in violation of Plaintiff's rights under the Disctrict of Columbia Human Rights Act as amended 2007, Title 2 Part D, § 2-1402.31(a)(1).

## COUNT IV

### Breach of contract

38.  Plaintiff re-allege and incorporate by reference, the above paragraphs, as if fully set forth herein.

39.  By accepting payment from Plaintiff for one night (see Exhibit B), allowing her to stay, and agreed and promised her that her inability to pay for the second night will not be a problem after the Department of Agriculture agency paid for it the next day which the Department attempted to pay but for Defendant's own negligence and discriminatory intents, Defendant breached their contract with Plaintiff. Plaintiff was an invitee of Defendants. Defendant is in hospitality business which essentially promises their invitees that their welfare and security will be taken care of if such invitees like Plaintiff stayed in their hotels. Plaintiff did not provide any hospitality to Plaintiff, to the contrary, Defendant breached their contract with Plaintiff and violated the very essence of what their business represented, providing secure and safe accommodation from travelers far away from home and family and friends.

## COUNT V

### Intentional Infliction of Emotional Distress under Tort Laws of the District of Columbia

40.  Plaintiff re-allege and incorporate by reference, the above paragraphs, as if fully set forth herein.

As a direct consequence of Defendant's violation of above Federal Civil Rights, The District of Columbia Human Rights and Breach of Defendant's own Contract with Plaintiff, Plaintiff suffered intentional infliction of emotional distress because Defendant acted intentionally or recklessly; Defendant 's conduct against Plaintiff was extreme and outrageous in the circumstances; Defendant's conduct caused Plaintiff to suffer severe emotional distress.

## COUNT VI

### Negligent Infliction of Serious Emotional Distress

41.  Plaintiff re-allege and incorporate by reference, the above paragraphs, as if fully set forth herein.

42.  As a direct consequence of Defendant's violation of above Federal Civil Rights, The District of Columbia Human Rights and Breach of Defendant's own Contract with Plaintiff, Plaintiff suffered Negligent Infliction of Emotional Distress because Defendant had an obligation to care for Plaintiff's emotional well-being and Plaintiff's emotional well being is necessarily implicated by the nature of Defendant's undertaking and relationship with Plaintiff as a provider of public accommodation and one whose business is supposed to be about hospitality. Defendant is a Hotel, a public accommodation place. Plaintiff is an invitee, had a contract with Defendant with the knowledge that Defendant's business is that of hospitality

43.  Plaintiffs reallege coercion, intimidation and undue influence against Plaintiffs, and incorporate by reference each and every allegation contained in paragraphs one through thirty-two above.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray, that the Court grant following relief:

(1) Enter a declaratory judgment finding that the foregoing actions of the Defendant violate the Civil Rights Act of 1866, 42 U.S.C. §1981, Title II of the Civil Rights Act of 1964 (Public Accommodations), 42 U.S.C. § 2000 et seq., the District of Columbia Human Rights Act of 1977 as amended 2007, Title 2 Part D, § 2-1402.31 et seq., Tort Laws of the District of Columbia, and Plaintiff's Contract with Defendant;

(2) Award Compensatory damages to Plaintiff in the amount of $3.5million or in an amount to be determined by a jury that would fully compensate Plaintiff for economic loss, humiliation, embarrassment, and emotional distress;

(3)  Award punitive damages to Plaintiff in an amount to be determined by the jury that would punish Defendant for the willful, wanton, and reckless conduct alleged here and that would effectively deter similar conduct in the future;

(4) Award Plaintiff their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1981 and or, § 2-1403.13(a)(1)(D) and (E) of the District of Columbia Human Rights Act 1977 as amended, 2007.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues so triable as of right.

**TRIAL BY JURY IS DEMANDED ON ALL ISSUES TRIABLE BY JURY.**


Respectfully submitted this 16th day of January, 2014


/s/ Stephen Christopher Swift\_\_\_\_

Stephen Christopher Swift

Swift & Swift, Attorneys at Law, P.L.L.C.

Suite 200

2121 Eisenhower Avenue

Alexandria, Virginia 22314-4688

Telephone: (703) 418 – 0000

Facsimile: (703) 535 – 8205

E-mail: steve@swift.law.pro

D.C. Bar No. 428459

*Attorney for Plaintiff*

*Sherika Nakye Harvey*

## **ATTORNEY CERTIFICATION**

I hereby certify that I am licensed to practice law in the District of Columbia and, having been admitted on May 6, 1991.

/s/ Stephen Christopher Swift____
Stephen Christopher Swift
Swift & Swift, Attorneys at Law, P.L.L.C.
Suite 200
2121 Eisenhower Avenue
Alexandria, Virginia 22314-4688
Telephone: (703) 418 – 0000
Facsimile: (703) 535 – 8205
E-mail: steve@swift.law.pro
D.C. Bar No. 428459
*Attorney for Plaintiff*
*Sherika Nakye Harvey*
*Attorney for Plaintiff*
*Sherika Nakye Harvey.*